GOULD et al. v. VILLAGE OF SENECA FALLS et al.

(Supreme Court, Appellate Division, Fourth Department. March 9, 1910.)

MUNICIPAL CORPORATIONS (§ 956*)—MUNICIPAL BONDS—REFERENDUM—FEMALE SUFFRAGE—"FUNDED DEBT."

Under General Municipal Law, § 5 (Consol. Laws, c. 24, § 6), the words "funded debt" include all municipal indebtedness embraced in or evidenced by a bond the principal of which is payable at a time beyond the current fiscal year of its issue, with periodical terms for the payment of interest, and when provision is made for the payment by raising necessary funds by future taxation and the quasi pledging in advance of the municipal revenue. Said section 6 declares that a funded debt shall not be created, except by resolution or ordinance passed by a two-thirds vote of the members elected to the board or council adopting it, or submitted to and ap-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proved by the electors of the town or county, or taxpayers of the village or city, when required by law. *Held*, that women otherwise qualified, except for sex, were entitled to vote on the question of the levy of a tax on the property of a village to pay waterworks bonds under Village Law (Consol. Laws, c. 64) § 128, subd. 6, providing that a woman who possesses the qualifications to vote for village officers, except the qualification of sex, who is the owner of property in the village assessed for taxation, is entitled to vote on the proposition to raise money by tax assessment.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 956.*

For other definitions, see Words and Phrases, vol. 4, pp. 3006, 3007.]

McLennan, P. J., dissenting.

Appeal from Special Term, Seneca County.

Action by Norman J. Gould and others against the Village of Seneca Falls and others. From an order granting a temporary injunction restraining the issue and sale of waterworks bonds by the village (118 N. Y. Supp. 648) defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

William H. Hurley and MacDonald Bros., for appellants.
Hammond & Hammond, for respondents.

WILLIAMS, J. The order appealed from should be affirmed, with $10 costs and disbursements.

The action was brought for a permanent injunction on the ground that the special election, at which the proposition to establish waterworks and to issue bonds was voted upon, was illegally conducted and void, and therefore such bonds would be invalid. The real question involved is the right of women to vote at such election. We think it must be said that there were hundreds of women in the village who were possessed of the qualification to vote, except on account of their sex. None of them were permitted to vote, though some of them attempted to. They were systematically and by design excluded as a class, and only men were allowed to vote. Some question is made as to whether technically these facts were established upon the motion; but we think for the purposes of this appeal they sufficiently appear. Upon the trial the facts can be made to appear more fully. The motion was decided mainly upon the one question of the right of women as a class to vote at the election.

The bonds when issued would become a "funded debt." Under section 5, c. 685, Laws 1892, now section 6 of the general municipal law (Article 2, c. 29, Laws 1909; chapter 24, Consol. Laws), it was held:

"That the words 'funded debt' * * * include all municipal indebtedness embraced within or evidenced by a bond the principal of which is payable at a time beyond the current fiscal year of its issue, with periodical terms for the payment of interest, and where provision is made for payment by the raising of the necessary funds, by future taxation, and the quasi pledging in advance of the municipal revenue."

See People ex rel. Peene v. Carpenter, 31 App. Div. 603, 52 N. Y. Supp. 781.

Section 6 of such municipal law provides that:

"A funded debt shall not be created by a municipal corporation except for a specific object expressly stated in the ordinance or resolution proposing it; nor unless such resolution or ordinance shall be passed by a two thirds vote of all the members elected to the board or council adopting it or submitted to and approved by the electors of the town or county or taxpayers of the village or city when required by law. Such ordinance or resolution, shall provide for raising annually by a tax, a sufficient sum to pay the interest and the principal as the same shall become due."

The proposition submitted at this special election was in form fully complying with this provision of the municipal law. It provided, among other things:

"And there shall be raised annually, by the levy and collection of a tax upon the taxable property of the village, a sum which, with the net revenue derived from the said waterworks system, shall be sufficient to pay the principal and the interest on the said several bonds, as such principal and interest shall mature and become due and payable."

There is no doubt but that it was necessary to submit the question to the taxpayers at a special election, before the bonds could be issued. See subdivision 6, § 128, of the village law (chapter 64, Laws 1909; chapter 64, Consol. Laws). Subdivision 2, § 41, of that law provides, among other things:

"A woman who possesses the qualification to vote for village officers except the qualification of sex, who is the owner of property in the village assessed upon the last proceedings assessment roll thereof, is entitled to vote upon a proposition to raise money by tax or assessment, or for the dissolution of the village."

There is no controversy over the other qualifications of women to vote, except their sex. There seems to be no doubt as to the statute above quoted. Its language is plain and unambiguous, and effect must be given to its provisions.

The case of People ex rel. Dillon v. Moir, 129 App. Div. 938, 115 N. Y. Supp. 1138, is not an authority for the proposition that the right of women to vote under this statute does not exist. No opinion was written when that case was affirmed in this court. It was held at Special Term that the proposition or resolution there submitted did not entitle women to vote, in that it provided only for the issue of bonds, and not for the raising of money by tax or assessment to pay the principal or interest as it matured. We affirmed, not upon the opinion at Special Term, but without any opinion at all. The bonds then would clearly have been void, because the resolution failed to comply with the provisions of section 6 of the general municipal law above referred to. That section expressly required the resolution to provide for raising annually by tax or assessment an amount sufficient to pay the principal and interest of the bonds as the same should become due, and nothing of this kind was contained in the resolution. Moreover, we held in Village of Canandaigua v. Hayes, 90 App. Div. 336–348, 85 N. Y. Supp. 488, that a resolution under this statute was insufficient to validate bonds which merely provided for the raising by annual tax of a sum sufficient to pay the interest and principal as the sums became

due, but failed to indicate in what installments the bonds were to be made payable and which were to be paid each year.

The resolution in the Dillon-Moir Case was defective in this respect, also :. It was manifestly insufficient in form, when adopted, to authorize the issue of any bonds. There was abundant reason, therefore, for affirming the order restraining such issue of bonds, regardless of the question as to the right of women to vote. We did not adopt the language of the opinion of the Special Term in affirming that order.

We think there should be no issue or sale of bonds here until a new election is had, at which women are permitted to vote, if qualified in other respects aside from sex, or at least until a trial of this case is had, and a decision on the merits is made.

Order affirmed, with $10 costs and disbursements. All concur, except Mc-LENNAN, P. J., who dissents on the ground that it does not appear that the votes rejected would have changed the result of the election.

